IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JESSE LAMONT SHORT, # 538000, | ) Civil Action No. 3:04-2028-DCN-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| CHARLESTON COUNTY DETENTION | ) |
| CENTER; K. P. NOVAK, JAIL | ) |
| ADMINISTRATOR; OFFICER BERING; AND | ) |
| OFFICER CARGO, | ) |
| | ) |
| Defendants. | ) **REPORT AND RECOMMENDATION** |
| | ) |

Plaintiff filed this action, pro se, on June 25, 2004.[1] At the time of the alleged incidents, he was a pretrial detainee at the Charleston County Detention Center ("CCDC"). He is currently an inmate at FCI Bennettsville. Defendants are the CCDC; CCDC administrator K. P. Novak ("Novak"); and CCDC Correctional Officers Biering and Cogar. Defendants filed a motion for summary judgment on November 22, 2004. Because Plaintiff is proceeding pro se, he was advised on November 29, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. On December 7, 2004, Plaintiff filed an affidavit in opposition to Defendants' motion for summary judgment.

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

## DISCUSSION

Plaintiff states that on June 9, 2004, as he was coming out of a multipurpose room after receiving a hair cut, he was approached by Officer Heyward who told him that he needed to clean up the barber shop or go to lock up. Plaintiff replied that he would be late to his room and asked if he would be excused for lateness. Heyward told him he would not be excused, and Plaintiff told Heyward he would not clean the room. Heyward then told Plaintiff he was going to lock up. Defendants Biering and Cogar came to move Plaintiff to lock up. These officers took Plaintiff to a multi-purpose room to be strip searched. Plaintiff complied with orders until he disagreed with a second order to "spread his butt cheeks" so that Officers could check for contraband. Plaintiff refused to comply. He claims that Officers Biering and Cogar then punched him in the eye and beat him on the back of his head and other areas of his body. They placed him in lock up and threw him his clothes. Plaintiff appears to allege that Biering and Cogar used excessive force against him after he refused orders during the strip search. Defendants argue that they are entitled to summary judgment because: (1) Plaintiff suffered no more than de minimis injury and Defendants used only the force necessary to subdue Plaintiff after he refused orders; (2) Officers Cogar and Biering are entitled to qualified immunity, (3) the CCDC is not a legal entity subject to suit, (4) Chief Novak is entitled to qualified immunity, (5) Plaintiff cannot establish supervisory liability, and (6) Chief Novak cannot be held liable in his official capacity.[2]

---

[2]Defendants have not provided sufficient information to determine whether Novak is entitled to Eleventh Amendment immunity.

1.  CCDC

CCDC argues that it is not a legal entity subject to suit. Buildings, walls, and fences do not act under color of state law. See Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under § 1983). Buildings and correctional institutions, like sheriff's departments and police departments, are not usually considered legal entities subject to suit. See, e.g., Martinez v. Winner, 771 F.2d 424, 444 (10th Cir. 1985)(Denver Police Department not a separate suable entity), vacating and remanding for consideration of mootness, 475 U.S. 1138 (1986); Post v. City of Fort Lauderdale, 750 F. Supp. 1131 (S.D.Fla. 1990); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989)(§ 1983 claims are directed at "persons" and a jail is clearly not a person amenable to suit); Shelby v. City of Atlanta, 578 F. Supp. 1368, 1370 (N.D.Ga. 1984). Hence, CCDC is not a "person" subject to suit under 42 U.S.C. § 1983.

2.  Excessive Force/De Minimis Injury

Plaintiff appears to allege that Defendants used excessive force against him because Biering and Cogar punched him after he refused direct orders. Defendants argue that any injuries sustained by Plaintiff were de minimis. Biering and Cogar state that "medical" was called after the alleged incident to examined Plaintiff for complaints of eye pain and Plaintiff was medically cleared. Biering and Cogar Affs. Defendants deny any use of excessive force and state that the force used was required to restrain Plaintiff who admittedly was not cooperating with the orders of officers. Officer Heyward states that on the day of the alleged incident, Plaintiff was late in going back to his room; Heyward told Plaintiff that Plaintiff was going to lock down for two hours for disobeying an order; Plaintiff became verbally aggressive, stating he was not going to comply; and Biering and Cogar

3

arrived to escort Plaintiff to lock up. Heyward Aff. Cogar and Biering state that Plaintiff became verbally assaultive and refused orders during a strip search conducted in conjunction with Plaintiff's placement in lock up. They ordered him to turn around and face the wall, at which time he lurched toward the officers. Cogar and Biering grabbed Plaintiff, placed him on the ground, and restrained him. Cogar and Biering Affs.

The Due Process Clause protects a pretrial detainee from "'the use of excessive force that amounts to punishment.'" United States v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990)(quoting Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)), cert. denied, 498 U.S. 1049 (1991). In Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994 (en banc), cert. denied, 513 U.S. 1114 (1995), the Fourth Circuit held that "absent the most extraordinary circumstances" excessive force claims do not lie where the injury is de minimis. Although Norman concerned a convicted prisoner (analyzing claims under the Eighth Amendment) rather than a pretrial detainee, its de minimis standard may also be applicable to pretrial detainees. Riley v. Dorton; 115 F.3d 1159 (4th Cir. 1997)(holding that a purely de minimis level of injury does not constitute the kind of excessive force amounting to punishment that Bell requires), cert. denied, 520 U.S. 1030 (1997); Williams v. Dehay, 81 F.3d 153, 1996 WL 128422 (4th Cir. 1996)[Table](affirming summary judgment on a pretrial detainee's excessive force claim where the plaintiff showed no more than de minimis injury). Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See Norman, 25 F.3d at 1262-63. With only de minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

4

>We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be 'of a sort repugnant to the conscience of mankind,' and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to show that excessive force was used against him because his injuries were de minimis. In his affidavit, Plaintiff states that a nurse examined him after the incident and said that none of his bones were broken.[3] There is no indication that Plaintiff sought medical help after that time for any alleged injuries or suffered any lasting injuries as a result of the alleged incident. As noted above, Defendants Biering and Cogar state that Plaintiff was medically cleared after the incident. Thus, any use of force by the defendants was de minimis. See, e.g., Norman, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024; Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs,

---

[3]Plaintiff submitted the affidavits of two other detainees with his own affidavit. The other detainees state that Plaintiff had a swollen eye, a few knots on his head, and a "busted" lip after the alleged incident.

brusque order of the inmate out of his cell and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force); Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D.Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Couglin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992)[Table]; Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force). Thus, Plaintiff fails to show that the alleged force by Defendants amounted to punishment in violation of the Fourteenth Amendment.

Even if Plaintiff could show he suffered more than de minimis injuries, he fails to show that any use of force by Defendants amounted to punishment in violation of the Fourteenth Amendment. "In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973); see also United States v. Cobb, supra; and Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1299-1300 (E.D.N.C. 1989). In this case, analysis of these factors fails to show that the use of force amounted to punishment. First, force was necessary to gain control of Plaintiff who admittedly refused direct orders both to return to his room and to cooperate with a strip search. Second, the officers' actions in restraining Plaintiff appears to be an appropriate use of force because of the need to gain control over Plaintiff. Plaintiff has alleged at most that he suffered from short term pain from Defendants' actions. Third, there was a threat reasonably perceived by Defendants because Plaintiff disobeyed orders. Finally, Defendants' actions appear to have been a good-faith effort to restore order.

3.      Supervisory Liability

Chief Novak argues that cannot be held liable on a theory of supervisory liability. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials

7

may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Novak was personally responsible for any of the alleged incidents. Further, Plaintiff has not shown that Chief Novak was deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails to show that Defendant Novak is liable on a theory of respondeat superior or supervisory liability.

4.     Qualified Immunity

Defendants argue that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights.  Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 17) be granted.

Respectfully submitted,

s/JOSEPH R. McCROREY
UNITED STATES MAGISTRATE JUDGE

April 5, 2005

Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

9

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

10